**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEVORG HAKOBYAN,<br>A# 212-967-855<br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, et al.,<br><br>Respondents. | NO. EDCV 26-2496-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

On May 11, 2026, Gevorg Hakobyan ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") with the Declaration of Sarah R. Hacobian against: Fereti Semaia, the Warden of the United States Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Todd Lyons, Acting ICE Director; the Field Officer Director for Los Angeles ICE Enforcement

and Removal Operations; and Does 1-10 (collectively "Respondents"). (Docket ("Dkt.") No. 1). The Petition alleges Petitioner is being detained in violation of due process of law. (Petition, ¶¶ 48-67). Petitioner seeks, among other things, his immediate release from custody. (Petition at 11).

On May 18, 2026, Respondents filed an Answer to the Petition, and Petitioner filed a Reply on May 21, 2026. (Dkt. Nos. 6-7). On September 6, 2026, Respondents filed a Supplemental Brief, and Petitioner filed a Supplement Brief on September 10, 2026. (Dkt. Nos. 14-15).

The parties have consented to proceed before the undersigned Magistrate Judge in this matter. (See Dkt. Nos. 3, 7).

For the reasons discussed below, the Petition is GRANTED and Petitioner is ordered immediately released from custody.

## II.

## BACKGROUND

Petitioner is a native and citizen of Armenia who lawfully entered the United States on November 23, 2016 pursuant to a B-2 visitor's visa. (Petition, ¶¶ 8-9, 16 & Exh. C; Dkt. No. 14-1). On March 13, 2017, Petitioner filed an application for asylum and remains in ongoing immigration proceedings. (Petition, ¶¶ 10, 19-20; Dkt. No. 14-1).

On May 5, 2026, ICE detained Petitioner when he appeared as directed for an immigration interview. (Petition, ¶¶ 22-23; Dkt. No. 14-1). That same day, DHS served Petitioner with a Notice to Appear, charging him with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who has remained in the United States for longer than permitted. (Dkt. No. 14-2; Petitioner's Supplemental Brief, Exh. A). Prior to being detained, Petitioner had complied with his immigration obligations and attended all required immigration appointments. (Petition, ¶ 21).

Petitioner, who has no criminal convictions,[1] established substantial community ties while residing in the United States with his wife and two children and acting as the family's primary financial provider and emotional support figure. (Petition, ¶¶ 18, 33, 37). Petitioner's detention has imposed severe hardships on his family. (Petition, ¶¶ 34-36).

## III.

## DISCUSSION

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017); Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

---

[1] On May 12, 2024, Petitioner was arrested and charged with one count of misdemeanor battery in violation of California Penal Code § 242. (Petition, Exh. B; Dkt. No. 14-1). However, the charge against him was dismissed on November 4, 2024, because the prosecution was unable to proceed. (Petition, Exh. B).

"[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013). First, courts consider whether the petitioner was deprived of a constitutionally

protected liberty interest, and second "whether that deprivation was accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

Petitioner contends he was denied due process of law when ICE detained him without providing him with notice and a meaningful pre-deprivation hearing before a neutral decisionmaker. (Petition, ¶¶ 24-26, 48-61). However, Respondents argue that, as an individual who overstayed his nonimmigrant visa, Petitioner does not have a conditional liberty interest protected by the Due Process Clause. (Respondents' Supplemental Brief at 2-3).

Here, Petitioner arrived in the United States on November 23, 2016, and filed an application for asylum on March 13, 2017, which remains pending. Petitioner resided in the United States for almost nine-and-a-half years before ICE detained him. During that time, Petitioner established substantial community ties, complied with his immigration obligations and appeared for required immigration appointments. He was also the primary financial provider for his wife and two children. "Judges throughout the Ninth Circuit have repeatedly held, on facts materially similar to these, 'that a noncitizen who has lived at liberty for an extended duration while his immigration case proceeds — pursuant to the Government's affirmative decision not to detain him — holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process.'" Ruiz Tellez v. United States Gen. Att'y, 2026 WL 2654571, *2 (E.D. Cal. 2026) (quoting Norberto C.M. v. Warden, Central Valley Annex, 2026 WL 1992747, *4 (E.D. Cal. 2026) and citing multiple cases); Gansukh v. Warden,

Adelanto Ice Processing Ctr., 2026 WL 2962655, *3 (C.D. Cal. 2026). The Court agrees and concludes that, based on the facts presented, Petitioner has a protected liberty interest in remaining free from custody. See Balbabyan v. Blanche, 2026 WL 2678267, *2 (C.D. Cal. 2026) ("Petitioner entered the United States in 2025 on a visitor visa and has a pending asylum application. ICE was aware of his presence given his application and his appearances at ICE appointments and interviews, but chose not to detain him. Petitioner established a life for himself in the United States and therefore has acquired a protected liberty interest in his release from immigration custody."); Yao v. Janec[k]a, 2026 WL 2666861, *1-2, 4 (C.D. Cal. 2026) ("Here, the Court finds that Petitioner[, who was initially lawfully admitted to the United States pursuant to a nonimmigrant visitor's visa and subsequently sought asylum,] has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her []detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief."); Khushvaktov v. Santacruz, 2026 WL 2491407, *3 (C.D. Cal. 2026) ("Petitioner[, who initially entered the country lawfully on a nonimmigrant visa and later filed for asylum,] developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States and the ties he built to the community over the past nearly 6 years."); Zhou v. Janec[k]a, 2026 WL 2365550, *5 (C.D. Cal. 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); Abdeltawab v. Armant, 2026 WL 1045564, *2 (C.D. Cal. 2026)

(The principle that a noncitizen has a protected liberty interest in remaining out of custody "extends to those like Petitioner who have never been in immigration custody in the first place due to years of deliberate acquiescence by Respondents."); Chaparro Ayala v. Albarran, 2026 WL 2722780, *3 (N.D. Cal. 2026) ("When the government makes 'a decision not to detain [someone] in the first place,' that decision can create 'the same liberty interest in [that person's] continued freedom as an individual initially detained.'" (quoting Kharitonova v. Albarran, 2026 WL 531441, *2 (N.D. Cal. 2026))); Kalkan v. Chestnut, 2026 WL 788112, *1 (E.D. Cal. 2026) (petitioner, who "entered the United States on a nonimmigrant visa and subsequently applied for asylum such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status" had a protected liberty interest), appeal dismissed by, 2026 WL 2446315 (9th Cir. 2026).

Having determined Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the government's procedures were constitutionally sufficient. Under Mathews, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022); Hernandez, 872 F.3d at 993; Zhou, 2026 WL 2365550 at *5; Abdeltawab, 2026 WL 1045564 at *2.

As to the first factor, "Petitioner has a vested liberty interest in remaining free from detention as he has lived for the last [nine] years." Abdeltawab, 2026 WL 1045564 at *2; Gansukh, 2026 WL 2962655 at *4; Kharitonova, 2026 WL 531441 at *2; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.' That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Yao, 2026 WL 2666861 at *5 ("Petitioner has a substantial interest in remaining in the community and pursuing her application for immigration relief."); Troykalo v. Armant, 2026 WL 2602910, *4 (C.D. Cal. 2026) ("Petitioner has a substantial private interest in remaining out of immigration custody. After Petitioner lawfully entered the United States in 2016 and filed his asylum application in 2017, Respondents 'made a decision not to detain [him]' during the pendency of his application. Hence, for nearly nine years, Respondents, with 'full knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [his] immigration application[] . . . continuously elected not to detain [him] while exercising authority

over [his] legal proceedings." This decision to allow Petitioner to live freely in the community gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" (citations omitted)). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. (Petition, ¶¶ 24-26). Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez v. Noem, 821 F. Supp. 3d 1183, 1191 (C.D. Cal. 2026) ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); Yao, 2026 WL 2666861 at *5 ("[T]here is a significant risk that the government will erroneously deprive Petitioner of [her] liberty interest if it does not provide her with pre-deprivation process."); Troykalo, 2026 WL 2602910 at *5 ("Where, as here, a petitioner has not received a hearing or other process prior to the revocation of her liberty, the risk of an

erroneous deprivation of liberty is high." (citations omitted)); Tzoc v. LaRose, 2026 WL 2227161, *4 (S.D. Cal. 2026) ("Where the Government detains a noncitizen after years of government-authorized liberty without first providing notice or an opportunity to be heard before a neutral decisionmaker, courts have consistently concluded that the risk of erroneous deprivation is high and that a pre-deprivation hearing would significantly reduce that risk."); Torres Ferrera v. Scott, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied. Put differently, no process can never equal due process. The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."); G.S. v. Hermosillo, 2026 WL 179962, *3 (W.D. Wash. 2026) ("the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation"). Therefore, the second Mathews factor favors Petitioner.

"Third, courts have routinely recognized that the Government's interest in detaining individuals like Petitioner without a hearing is 'low.'"[2] Abdeltawab, 2026 WL 1045564 at *3 (citations and emphasis omitted); see also Troykalo, 2026 WL 2602910 at *5 ("Respondents' interest in detaining Petitioner and the burden of a pre-detention

---

[2] Respondents assert that Petitioner's arrest for battery constitutes changed circumstances allowing for Petitioner's detention. (Answer at 2). However, the battery charge was dismissed over a year before ICE detained Petitioner. (Petition, Exh. B). In any event, "the fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'" Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)).

hearing are both minimal."); Pinchi, 792 F. Supp. 3d at 1036 ("[T]here is no countervailing government interest — the third and final *Mathews* factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Chaparro Ayala, 2026 WL 2722780 at *6 (same). And that is particularly so when, as here, "the government has not articulated any legitimate interest in support of detaining Petitioner without a pre-detention hearing."[3] Kharitonova, 2026 WL 531441 at *3; Zhou, 2026 WL 2365550 at *6; Yao, 2026 WL 2666861 at *5; see also Chaparro Ayala, 2026 WL 2722780 at *6 ("Respondents' present no explanation for why their 'interests [in detaining Petitioner] must be satisfied immediately,' far be it one that outweighs the risk of an ongoing and erroneous deprivation of constitutional rights." (quoting E.A. T.-B v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025))). Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025); see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)); Pinchi, 792 F. Supp. 3d at 1036 ("Nor can the government suggest that the cost of providing [a pre-deprivation hearing] would be fiscally or administratively onerous. If the government wishes to detain Ms. Garro Pinchi, it need only provide a hearing before a

[3] "[D]etention for its own sake is not a legitimate governmental interest." Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

neutral decisionmaker. 'In immigration court, custody hearings are routine and impose a minimal cost.'" (citation omitted)); Chaparro Ayala, 2026 WL 2722780 at *6 ("[T]he fiscal and administrative burdens of a pre-deprivation hearing are insignificant."). Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was detained without notice and a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Khushvaktov, 2026 WL 2491407 at *4 ("Petitioner's arrest on August 4, 2026, without prior notice or a pre-deprivation hearing violated Petitioner's procedural due process rights."); Zhou, 2365550 at *6 ("Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention — which was accompanied by no process — violates the Due Process Clause."); Yao, 2026 WL 2666861 at *6 (same); Ordonez v. Mullin, 2026 WL 1630411, *4 (C.D. Cal. 2026) (same); Tzoc, 2026 WL 2227161 at *5 ("Balancing the *Mathews* factors, the Court concludes that due process required Respondents to provide Petitioner with notice and

an opportunity to be heard before depriving him of his liberty. Petitioner had a substantial liberty interest in remaining free from physical detention after years of government-authorized liberty; the procedures employed created a significant risk of erroneous deprivation; and Respondents have identified no governmental interest sufficient to justify dispensing with pre-deprivation process. For those reasons, the Court concludes that Respondents violated Petitioner's procedural due process rights under the Fifth Amendment by detaining him without constitutionally adequate pre-deprivation process."). And "[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its inception, [his] immediate release is required."[4] Torres Ferrera, 2026 WL 776145 at *6; Tzoc, 2026 WL 2227161 at *5; see also Martinez, 821 F. Supp. 3d at 1196 ("Petitioner's release from custody is the appropriate remedy" since among other things, "Petitioner continues to suffer irreparable harm so long as she remains unlawfully []detained"); Kositsin v. Santacruz, 2026 WL 2866467, *4 (C.D. Cal. 2026) ("Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that Petitioner's detention without adequate pre-deprivation process violated due process" and he is entitled to be released from custody); Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Ctr., 2026 WL 2497334, *3 (C.D. Cal. 2026) ("Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status

[4] Having so concluded, the Court does not address the other claims Petitioner raises.

quo that was in effect before Respondents violated Petitioner's due process rights."); Khushvaktov, 2026 WL 2491407 at *4 ("Given th[e] violation of Petitioner's due process rights, the Court concludes that 'Petitioner's release is necessary to return him to the status quo.'" (citation omitted)); Ordonez, 2026 WL 1630411 at *4 ("As has been found in countless similar cases in this Circuit, the appropriate remedy . . . is to order Petitioners placed in the position they would have been absent the due process violation — that is, they should be released from custody on the conditions that were initially imposed.").

**IV.**

**ORDER**

Accordingly, it is hereby ORDERED that the Petition (Dkt. No. 1) is **GRANTED.** Respondents shall immediately release Petitioner (A# 212-967-855) from immigration custody without the imposition of any restraints on his liberty, such as reporting requirements, GPS, or electronic monitoring. Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations. The Court further ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on October 7, 2026, confirming Petitioner has been released from custody. IT IS SO ORDERED.

DATED: October 5, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE